# Steele v. Moody.

### *Real Action in the Nature of Ejectment.*

1. *Exemption law in force in* 1864; *construed.*—The laws in force in this State in 1864, exempting property from levy and sale, did not *propio vigore* set apart or exempt any specific property except burying grounds.

2. *Same.*—These laws conferred upon heads of families resident in this State a mere privilege, which could not ripen into a right until asserted and exercised in the manner provided by law; and the right to a homestead when claimed, being dependent on proceedings to ascertain its location, quantity and value, such claim was a condition precedent to its allowance, and if not made before a sale the exemption was lost.

3. *Same; proceedings to obtain exemption in bankrupt court.*—Under the bankrupt law and rules and general orders of force in May, 1868, a debtor adjudged a bankrupt on his own petition was required to claim the exemptions given by its 14th section (which included the exemptions allowed by the State law in 1864) at the time of filing the petition, and the mode of claiming and obtaining the exemption was specifically pointed out, and unless this was done before a sale by the assignee, the debtor waived his privilege of claiming the exemptions.

4. *State court; jurisdiction as to exemptions in favor of bankrupts.*—Upon the filing of the petition in bankruptcy, the court of bankruptcy obtains full and exclusive jurisdiction over the bankrupt, his estate and the exemptions he is entitled to claim out of it; and where the assignee sells property to which the bankrupt had title at the adjudication of bankruptcy, no State court can entertain any inquiry as to whether such proprerty was exempt to the bankrupt.

5. *Homestead, claim of; what cannot be asserted in State court.*—A mere claim of exemption made by the bankrupt to his assignee, but not incorporated in the schedules to his petition and not allowed by the assignee or certified by the judge or register, cannot be asserted in a State court against a purchaser from the assignee.

6. *Same.*—Where the bankrupt inadvertently omitted to claim the exemption in his schedule, or misdescribed his homestead, the court of bankruptcy may cure the omission by allowing an amendment, but no other court can exercise this power, or receive parol proof to cure the mistake.

7. *Limitation in bankrupt law; to what does not apply.*—The limitation of suits by and against an assignee to two years, prescribed by the bankrupt law, has no application to an ejectment suit in a State court by a purchaser to recover from the bankrupt lands which his assignee had sold.

APPEAL from Circuit Court of St. Clair.

Tried before Hon. W. L. WHITLOCK.

This was a real action in the nature of ejectment, brought by the appellant, Sylvester Steele, against the appellee, B. C. Moody, on the 22d day of June, 1872, to recover the east half of the northwest quarter, and the northeast quarter, and east half of southeast quarter—all in section one, township seventeen of range one, east, lying in St. Clair county.

Moody disclaimed possession of any of the land at the time of suit brought, except as to the east half of the northwest quarter of section one, township seventeen, range one,

east, "which he claimed as a homestead' under the bankrupt
act of Congress of March 2d, 1867, and the laws of Ala-
bama." He also averred by plea that at and before the com-
mencement of the suit the remainder of the lands were in
possession of one Wiley Moody, who held them adversely to
all the world, &c.

All the lands sued for formerly belonged to the appellee,
but prior to filing his petition in bankruptcy he had sold and
conveyed a portion of them to his son Wiley Moody to ob-
tain money to pay the costs and expenses of the court of
bankruptcy.

The material facts of the case are as follows : Appellee
was adjudicated a bankrupt on his own petition on the 2d
day of May, 1868, and on the 20th day of June following,
an assignment of all his property was made by the register to
Forman, as assignee. On the 30th day of December, 1871,
the assignee, under an order of the court of bankruptcy,
made October 2d, 1871, sold the premises sued for and made
a deed thereof to appellant, who was the highest bidder.
Appellee had been in possession of the lands claimed as a
homestead for many years, and the location of said lands, as
well as Wiley Moody's claim to the portion sold him, was
known to the assignee, Forman, for more than two years
after the adjudication of bankruptcy against the appellee,
and the testimony of all the witnesses went to show that the
lands on which he resided at the filing of his petition were
the east half of the northwest quarter of section one, town-
ship seventeen, range one, east. The testimony as to the
value of the homestead tract, at the time of the filing of the
petition was conflicting, some witnesses estimating its
value at $1,500 and others at $1,000.

The lands claimed as a homestead were not specified in the
schedules filed by the bankrupt, nor were they ever set apart
or allowed by the assignee or certified by the register or
judge, but remained in the possession of the bankrupt with-
out any demand to surrender them.

Some time in the summer of 1868 the bankrupt was in-
formed by the assignee that he (the assignee) "could not
make the assignment of a homestead to him, because the
numbers of the land were wrong in his schedules in bank-
ruptcy," and appellee told him that " he knew nothing about
land numbers and subdivisions, &c., and could not tell
whether the numbers were right or wrong in the schedules,
but that he claimed the eighty acre tract on which he lived
as a homestead." The appellee, who was an illiterate man,
testified that when he filed his schedule in bankruptcy he

[Steele v. Moody.]

intended to claim the land which he occupied, by its proper numbers, as a homestead, but that he knew nothing about the numbers and fractional divisions of land, and that at the time of filing his petition, as well as since, he was the head of a family, residing in St. Clair county, in this State. At the time of the trial he had obtained a discharge in bankruptcy.

The court gave the following, among other charges, to the jury:

"3d. If the jury believe from the evidence that the defendant claimed the east half of the northwest quarter of section one, township seventeen, range one, east, as a homestead, and that he was residing on it at the time of filing his petition in bankruptcy, then the title to it never passed to his assignee unless defendant voluntarily surrendered it to him.

"4th. If the jury believe from the evidence that the defendant was residing on said half quarter section of land at the time of filing his petition in bankruptcy, and that he claimed the same as exempt to him as a homestead under the bankrupt act of 1867, or intended to claim the same as such, and failed to do so by a mis-description of land numbers, and that such fact was known to the assignee, Forman, and that he knew the lands on which Moody resided, and knew that he claimed said eighty acres as a homestead, then the plaintiff cannot recover in this suit as to half quarter section of lands."

"5th. If the jury believe from the evidence that at the time defendant went into bankruptcy he claimed the east half of northwest quarter of section one, township seventeen, range one, east, in St. Clair county, as a homestead, under the bankrupt act of 1867, or that he intended to claim the same as such and failed to do so by reason of a mis-description of the lands or numbers thereof, and that such mistake was known to the assignee, who also knew the lands on which defendant resided, and that the lands were so claimed or intended to be claimed by him as a homestead at the time defendant went into bankruptcy, and if they believe defendant held the same as his homestead for more than two years after such knowledge was acquired by the assignee and before the sale to plaintiff, then the plaintiff is bound by the limitation of two years in said bankrupt act of March, 1867, regardless of the value of said lands.

"6th. If the jury believe from the evidence that the defendant was residing upon said half quarter section at the time of filing his petition in bankruptcy, and that he claimed

[Steele v. Moody.]

the same as exempt as a homestead, under the provisions of the bankrupt law of 1867, then so far as to said half quarter section, they must find for the defendant, although they may believe the same was worth, at the time of the filing of the petition in bankruptcy and at all times since, more than five hundred dollars in gold, and whether the same or any part thereof had ever been set off to him as exempt by his assignee or by the authority of the United States bankrupt court.

"7th. Before the plaintiff can recover the other lands mentioned in the complaint, he must prove that he had the legal title paramount to the defendant's title to the lands and right to possession, and that defendant was in possession of the same at the commencement of the suit.

"8th. If the jury believe from the evidence that Wiley Moody was living upon said northeast quarter of section one, claiming all of said quarter section as his own, and that this claim was open and notorious for more than two years after such claim was made known to the assignee, Forman, and before the sale by said assignee to plaintiff, then the plaintiff cannot recover said quarter section or any part thereof in this action, although they may believe that such claim and possession were acquired from his father for the purpose of defrauding the creditors of his father."

The plaintiff excepted to the giving of each of these charges, and they are now assigned as error.

HEWITT & WALKER, for appellant.—The bankrupt had only the exemptions given by our laws in 1864. Under these laws his homestead must have been claimed, and, if need be, set apart to the head of the family before sale; else it was lost. Our exemption law did not absolutely set apart the homestead, but conferred a right to have a homestead if claimed in time. 30 Ala. 225; 10 Ala. 270; Bell v. Davis, 42 Ala. 401. The statute of limitations of two years had nothing to do with the case. 17 How. 315. Several of the charges given assume the fact that appellee was the head of a family. The sale to Wiley Moody was intended to defraud the assignee, and the title passed to Forman, notwithstanding Moody's conveyance from appellee. 5 Mason, 143; 4 Black. 85; 29 Ala. 112.

JOHN W. INZER AND LEROY F. BOX, contra.—Under the bankrupt law there are two classes of exempt property: 1st, that which may be set aside at the discretion of the assignee; 2d, that which is absolutely and unconditionally exempt by

[Steele v. Moody.]

the act itself—the bankrupt's title to which is not impaired, changed or affected in any way by any act or omission of the assignee, or by any proceedings in the bankrupt court.  See section 14 of the act.  By the terms of that act, the State exemption laws are made part of the bankrupt law, and there is no discretion in the assignee not to allot the homestead.  The failure of the assignee to act can not affect a right derived, not from the act of the assignee, but from the law itself.  *In re Jones*, 4 C. S. N. 66.  The title to the homestead not passing, the assignee had no claim to it; if he did, however, the appellee held adversely to him for more than two years, and this barred his right, or any one claiming under him, to sue in relation to property of the bankrupt.  If the charges complained of were merely misleading, appellant should have asked explanatory charges.

BRICKELL, C. J.—The 14th section of the bankrupt law, as originally enacted, and as of force, not only when the defendant was on his own petition adjudicated, but when he obtained his discharge as a bankrupt, excepted from the operation of the assignment of his estate such property, other than that specially designated, as was "exempted from levy and sale upon execution or other process or order of any court, by the laws of the State in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy," to an amount not exceeding that allowed by the laws of the State in force in 1864.  The law of this State of force in 1864, exempted from levy and sale by any legal process, "such real property as may be selected by the head of the family, to include the homestead, not to exceed three hundred and twenty acres, and in value not to exceed five hundred dollars; all burying grounds and lots set apart for the interment of deceased persons, and the improvements and appurtenances to the same appertaining, are reserved for the use of the families to whom they respectively belong."  R. C. § 2880.  The value of the real property was to be ascertained by three disinterested freeholders, summoned by the sheriff, who made the valuation, and if necessary set off the lands by metes and bounds.  R. C. 2881.  The exemption was not conferred on every person resident within the jurisdiction of the State, debtor though he was, and reduced to insolvency.  It was only when connected with others, who were legally dependent on him, and to whose maintenance the law compelled him, that he was entitled to claim the exemption.  He must have been the head of a family residing with him, within the State, or the

[Steele *v.* Moody.]

legal relation of dependence contemplated by the statute did not exist, and there was no right to an exemption of either personal or real property. *Allen* v. *Manasse,* 4 Ala. 554; *Abercrombie* v. *Alderson,* 9 Ala. 981; *Boykin* v. *Edwards,* 21 Ala. 261; *Keiffer* v. *Barney,* 31 Ala. 192.

The statute conferred on the debtor standing as the head of a family, sustaining to others a legal relation rendering them legally dependent on him, and to whose maintenance he was legally compellable, a *privilege,* not ripening into a *right* until it was asserted and exercised. And it must have been asserted and exercised before a sale of the property or it was lost. *Gresham* v *Walker,* 10 Ala. 370; *Simpson* v. *Simpson,* 30 Ala. 225: *Bell* v. *Davis,* 42 Ala. 460. The statute did not execute itself—it did not positively inhibit the levy and sale of property specifically designated, and distinguishable from all other property the debtor owned or possessed. It did not of itself set apart any property real or personal (except burying grounds), and free it from levy and sale for the payment of debts. Its language was: "the following property may be permanently retained for the use of every family in the State, exempt from levy and sale by any legal process," followed by an enumeration of different kinds of personal property, from which the debtor could make a selection, either in quantity or value, and then such real property as may be selected by the head of the family to include the homestead," &c. It was not an absolute exemption, but the privilege of the debtor to select and retain. A privilege it was optional with him whether he would exercise or not. If he permitted the levy on such property, and accepted its custody as the bailee of the sheriff, the levy was good, and the sheriff as much bound by it as he would have been by the levy on property to which no such claim could have been made. *Gresham* v. *Walker, supra.* If the levy and sale was of real estate, the failure to claim the exemption before a sale, even though it was made without a notice to, and without the knowledge of the debtor, was a loss of the privilege. *Bell* v. *Davis, supra.* As to real property, it is clear to perfect the exemption, to make it available, the debtor must have been active. He must have *selected it,* and its value must have been ascertained if, after the selection, there was any dispute about it by three disinterested freeholders summoned by the sheriff. There could be no dispute as to value until he made the selection. Selection itself implies choice, preference, made known to others. The last clause of the statute executes itself. No act of the debtor or of any one else was necessary to its full operation. It

exempted absolutely and unconditionally without claim from any one, "all burying grounds and lots for the interment of deceased persons." These were reserved from levy and sale, though no claim was asserted to them, and devoted to the use of the families to whom they respectively belonged, without regard to their value. Not so with other real property; it must have been selected by the head of the family. When selected, if a doubt or dispute arose, it must have been valued. When valued, if necessary to its identification and distinction from other lands, it must have been set by metes and bounds. All this must have preceded the sale under legal process. Until it was done the privilege of the debtor did not ripen into a right. Such were the statutes of force in 1864, to the benefits of which the defendant was entitled on the adjudication in bankruptcy.

An adjudication of bankruptcy is in the nature of a staute execution for all creditors. The assignee, as the representative of creditors, stands in the relation of a judgment creditor, capable of enforcing every right such creditor could enforce. Bump on Bankruptcy, (9th Ed. 489–90). The 10th section of the bankrupt law required the justices of the supreme court of the United States to frame general orders for regulating the practice and procedure of the district courts in bankruptcy and generally for carrying the provisions of the law into effect. These orders they were required to report to Congress. In obedience to this requisition general orders were framed and forms prescribed for the various proceedings in bankruptcy. The form of a petition by a debtor desiring to obtain the benefit of the law, and of the several schedules which must be exhibited with it, disclosing the nature, character and consideration of his indebtedness, and a description of all his estate, real or personal, its true condition, and the parts of it subject to or exempt from the payment of debts, were prescribed. The 32d general order, as originally framed, and which was of force when the defendant was adjudicated a bankrupt, required an observance of the several forms specified in the schedules. A schedule required to be annexed to a debtors's voluntary petition was entitled: "Schedule B—5. A particular statement of the property claimed as exempted from the operation of said act, by the provisions of the 14th section thereof, giving each item of property and its valuation; and if any portion of it is real estate, its location, description, and present use. [The property claimed to be exempt under the laws of any State is to be described separately from the rest, and reference given to the statute of said State creating the exemption.]"

[Steele *v.* Moody.]

The 19th general order required the assignee within twenty days after receiving the assignment to make report to the court of the articles set off to the bankrupt as exempt under the 14th section, with the estimated value of each article. The 57th form was a "certificate of exempted property," to be signed by the judge of the district court, or register in bankruptcy, setting out the property designated and set apart to the bankrupt as exempt, its particular description and value. The manifest purpose of these orders is, that if a voluntary bankrupt claims the exemptions of property, to which the 14th section of the law entitles him, he shall assert the claim on the filing of his petition. His creditors have the right to be informed what property is so claimed—they have a right to know its kind, and in some instances its value. The right to the exemption they can controvert, and to their right of controversy, it is material they shall be fully informed of the precise property claimed. The whole matter of exemption thus becomes a matter lying within the exclusive jurisdiction of the court of bankruptcy. There the right must be asserted, and there it must be resisted and controverted. The court of bankruptcy by the filing of the voluntary petition, in itself an act of bankruptcy, acquires full and exclusive jurisdiction of the bankrupt and his estate. It may be, other tribunals have previously acquired jurisdiction of the bankrupt or of his estate, which the bankruptcy will not displace. But in the absence of any such prior acquisition of jurisdiction, the jurisdiction of the court of bankruptcy is full and complete, and exclusive. The title of the bankrupt to the property exempt it was intended should be shown by the report of the assignee setting it apart, and the certificate of its exemption, signed by the judge or register. This is full evidence of his right, derived from the court having jurisdiction of his person and estate. No other court can suffer it assailed, or deny to it validity and operation. When his assignee sells to a third person property in which the bankrupt had title at the time of adjudication of bankruptcy, no other court, without encroaching on the jurisdiction of the court of bankruptcy, can inquire whether such property was exempt from the assignment in bankruptcy. If it should enter on the inquiry, conflicts of jurisdiction and of judgment would inevitably arise, from which only strife and confusion would follow. The homestead statute of Georgia seems to allow the wife and children of a debtor to claim a homestead from his lands. The husband having been adjudged a bankrupt, it has been decided there the wife and children could not in the State courts

[Steele v. Moody.]

make the claim against the assignee in bankruptcy, or those claiming under him—that the State courts had no jurisdiction, and the application should be made to the court of bankruptcy. *Lumpkin* v. *Eason*, 44 Ga. 339; *Woolfolk* v. *Murray*, *Ib.* 133.

Under our statutes in force in 1864, as we have seen, the exemption of real estate allowed a debtor must have been claimed before a sale of the lands under legal process. The adjudication in bankruptcy operating a statute execution, an exemption of the lands must have been claimed before a sale by the assignee. A failure to claim, in either case, is the mere election of the debtor to waive a privilege he could have exercised. Not making the claim to the exemption in the mode prescribed by the practice and orders in bankruptcy, before a sale by the assignee, he must be deemed to have waived it when a controversy arises between him and a purchaser from the assignee in a State court. No other principle will preserve the harmony and dignity of judicial proceedings, avoid a conflict of jurisdictions, and serve the ends of justice. Suppose the defendant was entitled to an exemption of the land he now claims, and its sale by the assignee was irregular, and his claim was now allowed, a court of the State would be impotent to do justice to the purchaser by compelling a return to him of the purchase money. If he applied to the court of bankruptcy for a refunding of the purchase money, he might be met with the answer, that the defendant had waived the exemption, and he was entitled to the land, for which he had paid. The one court adjudges he shall not have the land, and the other determines to keep the money he paid as its consideration. No such unseemly adjudications are in accordance with the law.

The third, fourth, fifth and sixth charges given by the circuit court are erroneous. There is in each charge an omission to refer to the jury the ascertainment of a fact material to the exemption, without which, claim could not be made to it. That fact is, whether the defendant was the head of a family residing within this State. The charges impliedly assume this fact. We would hesitate to reverse because of the generality of the charges in this respect, or because they may seem to invade the province of the jury. The probability is, the trial was so conducted as to impress the court and the jury with the belief that though this was a fact dependent on oral evidence, for the determination of the jury, it was not controverted, but rather conceded. The plaintiff could and would have so easily relieved himself

[Steele *v.* Moody.]

from injury in this respect by merely requesting a charge directing the attention of the jury to the fact, if it was disputed, that we repeat we would hesitate to reverse because the charges seem to assume the fact. These charges all proceed on the hypothesis, that a mere claim of the exemption of a homestead, made by the bankrupt to the assignee, though not incorporated in the schedules to his petition, and not allowed by the assignee, nor certified by the judge or register, can be asserted in a State court against the purchaser from the assignee. This hypothesis is erroneous. If the claim was not asserted by its interposition in the schedules to the petition, it was waived, and cannot be preferred against the purchaser from the assignee. Perhaps, if the exemption of a homestead was absolute and unconditional, not dependent on any act to be done by the debtor, as is the exemption of burying grounds, nor at all dependent on quantity or value, a different rule would obtain. But dependent as it is on the assertion of a claim by the debtor, and proceedings being necessary to its ascertainment, as to location, quantity and value, when claimed, the claim is a condition precedent to its allowance. Smyth on Homesteads, § 56.

Two of the charges lay stress upon the fact, of which there was some evidence, that the defendant, in the schedules filed with his petition, intended and attempted to claim the lands as exempt, but from inadvertence misdescribed them. If such mistake was committed, the power of the court of bankruptcy to permit its correction by an amendment of the schedules was ample. This power no other court can exercise, nor can it receive mere parol evidence to cure the mistake.

The limitation of suits by and against an assignee to two years, prescribed by the bankrupt law, if it was available to the bankrupt, should have been asserted in the court of bankruptcy, on an application to vacate the sale made by the assignee. In defense of this suit it was not available.

The seventh and eighth charges are not strictly correct, but perhaps the error in them was not prejudicial to the appellant. It seems to have been uncontroverted, that prior to and at the commencement of the suit, the lands referred to in the charges were not in the possession of the defendant but were in possession of one Wiley Moody, who claimed title to them. This being true, the action for their recovery should have been against him, and could not be supported against the defendant. *Gayle* v. *Smith*, June term, 1874. The pleas filed by the defendant put in issue the fact of possession at the commencement of suit.

For the errors we have noticed the judgment must be reversed and cause remanded.